UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ASA JAVON BROWN, | Case No. 2:21-cv-01396-GMN-MDC |
| Petitioner, | |
| v. | ORDER |
| CALVIN JOHNSON, et al., | |
| Respondents. | |

Counseled Petitioner Asa Javon Brown brings this first amended habeas corpus petition (ECF No. 23) under 28 U.S.C. § 2254 to challenge his second-degree murder with use of a deadly weapon conviction in state court, alleging claims of ineffective assistance of counsel and violation of his right to an impartial jury. Respondents move to dismiss the petition as untimely and because his claims are unexhausted. ECF No. 42. Also before the Court is Brown's Motion for Leave to Conduct Discovery and for a Protective Order for Juror Information (ECF No. 24) and Motion for Leave to File Exhibits Under Seal (ECF No. 48).

**Background**

Brown challenges a 2018 state court judgment of conviction for second-degree murder with use of a deadly weapon. ECF No. 37-15. The state court sentenced Brown to an aggregate sentence of life with a minimum parole eligibility of 180 months. *Id*. The Nevada Court of Appeals affirmed the conviction. ECF No. 37-23. In December 2019, Brown filed a state habeas postconviction petition, which the state court denied. ECF No. 38-30. Although the state court found Brown's state habeas petition was untimely, the state court found good cause for the delay due to a lockdown at the prison that prohibited library use and denied the petition on the merits. ECF No. 40-5. On appeal, the Nevada Court of Appeals affirmed the denial of the petition. ECF No. 40-21.

Brown's *pro per* petition indicates that he dispatched his petition to this court on July 2, 2021. ECF No. 7 at 1. The declaration under penalty of perjury page of his petition, however, is

signed and dated July 8, 2021. *Id*. at 15. The Court received his petition on July 26, 2021. *Id*. at 1. The Court appointed counsel and granted leave to amend the petition. ECF No. 6. Brown filed his first amended petition. ECF No. 23. Respondents now move to dismiss his petition as untimely. ECF No. 42. They further argue that Grounds 1(A), 1(B), and 2 are unexhausted. *Id*. Brown asserts that he is entitled to equitable tolling based on cognitive defects, frequent prison lockdowns, as well as his lack of access to resources due to COVID restrictions, as preventing him from filing a timely petition. ECF No. 46 at 2.

## Discussion

### I. Timeliness

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year limitation period for state prisoners to file a federal habeas petition pursuant to 28 U.S.C. § 2254. The one-year limitation period, *i.e.*, 365 days, begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's judgment of conviction became final by either the conclusion of direct appellate review or the expiration of the time for seeking such review. *Id.* § 2244(d)(1)(A). The AEDPA limitations period is tolled while a "properly filed" state post-conviction proceeding, or other collateral review is pending. 28 U.S.C. § 2244(d)(2). However, an untimely state petition is not "properly filed" and thus does not toll the federal statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). No statutory tolling is permitted for the time that a federal habeas petition is pending. *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001).

Here, Brown's conviction became final after the time expired for filing a petition for writ of certiorari with the United States Supreme Court on February 6, 2019. Brown filed his state habeas postconviction petition on December 19, 2019, tolling the AEDPA clock. As a result, 316 days elapsed between the finality of the judgment and the filing of the state habeas postconviction petition. The remaining 49 days of the AEDPA limitations period were statutorily tolled during the pendency of all proceedings related to the state petition. Tolling ended on May 10, 2021, when the remittitur issued for the order of affirmance by the Nevada Court of Appeals. The AEDPA clock restarted the following day and expired 49 days later on

June 28, 2021.

The parties agree that Brown filed his federal petition after the one-year limitation period under AEDPA expired. Brown concedes that his federal petition was filed 10 days after the June 28, 2021, deadline. ECF No. 46 at 2. Brown argues that he can overcome any timeliness bars because he is entitled to equitable tolling.

### a. Equitable Tolling

The one-year period of limitation of 28 U.S.C. § 2244(d)(1) is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Equitable tolling does not stop the limitations clock the way that statutory tolling does.

"First, for a litigant to demonstrate 'he has been pursuing his rights diligently,' *Holland*, 560 U.S. at 649 [...], and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, but before and after as well, up to the time of filing his claim in federal court." *Smith v. Davis*, 953 F.3d 582, 598-99 (9th Cir.) (en banc), cert. denied, 141 S. Ct. 878 (2020). "[I]t is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; when free from the extraordinary circumstance, he must also be diligent in actively pursuing his rights." *Id.* at 599. "Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy." *Id.*

Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Id.* at 1065. He accordingly

must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007). "[I]t is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may be the proper remedy.'" *Smith*, 953 F.3d at 600.

Equitable tolling, though unavailable in most cases, requires a fact-intensive analysis that may involve the confluence of numerous factors. *Lott v. Mueller*, 304 F.3d 918, 923-924 (9th Cir. 2002). Although a petitioner is not required to carry his burden of persuasion at the pleading stage, equitable tolling issues are highly fact-dependent and he must, therefore, allege sufficient facts that would, if true, entitle him to equitable tolling. *See Orthel v. Yates*, 795 F.3d 935, 940 (9th Cir. 2015). In holding that mental impairment can constitute grounds for equitable tolling, the Ninth Circuit has recognized the importance of developing the record and instructed that a court's assessment of equitable tolling must be guided by a "flexible, totality-of-the-circumstances approach." *See Forbess v. Franke*, 749 F.3d 837, 842 (9th Cir. 2014); *See also Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (reversing dismissal of federal habeas petition due to district court's failure to develop the record in response to the petitioner's claim of mental incompetency).

### b. Mental Impairment

Brown argues that he is entitled to 10 days of equitable tolling because the confluence of Brown's cognitive defects, COVID restrictions, and lockdowns amounted to extraordinary circumstances. To obtain equitable tolling because of mental impairment:

(1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either

    a. Petitioner was unable to rationally or factually understand the need to timely file, or

    b. Petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible

to meet the filing deadline under the totality of the circumstances including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010).

To support his claim that he meets the first prong of the *Bills* test, Brown relies on a 2017 psychological evaluation performed by Dr. Paglini, who evaluated Brown in August 2017. ECF No. 49-1. Brown was in special education from the fourth to twelfth grade for reading and math. *Id*. at 6. He graduated from high school with an adjusted diploma in May 2011. *Id*. at 7. Following graduation, Brown had numerous different types of jobs, such as working at fast-food establishments, but did not hold a job for more than a few months. *Id*.

Dr. Paglini performed cognitive testing and noted that Brown had a full-scale IQ score of 79. *Id*. at 11. Dr. Paglini concluded that Brown "exhibited significant deficits," but also "exhibited a strong effort on testing." *Id*. at 12. Dr. Paglini noted that Brown "struggled to sound out words and on a consistent basis was able to sound words out after much effort." *Id*. Dr. Paglini further noted that Brown "struggled with reading, made numerous reading errors," but "was able to provide the correct response." *Id*. Brown's spelling abilities were at a third-grade level. *Id*. Dr. Paglini concluded that "cognitive deficits are evident regarding his working memory and processing speed." *Id*. at 15. Brown asserts that his cognitive deficits directly resulted in his inability to properly file his federal habeas petition.

### c. Lockdowns and COVID Restrictions

Brown asserts that lack of access to the law library due to prison lockdowns and COVID restrictions prevented him from timely filing his federal petition. He offers the following facts in support of his argument that equitable tolling is warranted: (1) from December 2018 to December 2019, Brown was housed at High Desert Correctional Center where lockdowns occurred frequently and law library staffers did not visit his unit; (2) from September 16, to November 15, 2019, Brown was unable to access the law library due to an institutional lockdown and his legal research requests were not processed during this time; (3) the state district court granted equitable tolling despite Brown filing his state habeas petition 16 days late; (4) Brown was housed at Southern Desert Correction Center ("SDCC") in May 2021 where COVID restrictions remained in place limiting law library access to just a few inmates per day; (5) notice

5

of remittitur of the Nevada appellate court's decision affirming the denial of his state petition was delayed due to mailing issues at the prison; (6) SDCC instituted a two-to-three-week lockdown due to an inmate being stabbed 30 times; (7) Brown had to pay another inmate to obtain a federal habeas petition form; (8) COVID restrictions limited access to the prison store to purchase stamps and other inmates would not sell their stamps to Brown due to a shortage. ECF Nos. 46 at 6-8; 47-1.

Respondents contest the severity of Brown's cognitive impairments and physical restrictions due to lockdowns and the COVID pandemic by citing that Brown was able to file ten documents in state court, including a motion to withdraw counsel, a petition for habeas corpus, and a motion to extend time to file his petition. ECF No. 57 at 4-5.  They further argue that the state court's ruling granting good cause to overcome the state bar even though his state habeas petition was time-barred should have alerted Brown to the need to file a protective federal habeas petition. *Id*. at 5.

Although lockdowns and COVID restrictions alone may not warrant tolling, the Court must assess the record as a whole under the totality of the circumstances. *See Forbess*, 749 F.3d at 842 (finding that petitioner's mental illness made it impossible under the totality of the circumstances to meet the filing deadline for his petition despite his diligence). Here, Brown's circumstances include his cognitive deficits affecting his working memory and processing speed, the prison lockdowns restricting access to the law library, COVID restrictions limiting access to the law library, as well as a delay of receipt of notice of the remittitur of the Nevada appellate court's decision affirming denial of relief of his state habeas petition.  The Court finds that these facts are sufficient to establish extraordinary circumstances.

### d. Diligence

The Court must consider whether or not Brown diligently pursued his rights. *See Pace*, 544 U.S. at 418. "The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010).  "What reasonable diligence would look like … varies based on the specifics of the case, but in every instance reasonable diligence seemingly requires the petitioner to work on his petition with some

regularity—as permitted by his circumstances—until he files it in the district court. *Smith*, 953 F.3d at 601. In *Roy v. Lambert*, the Ninth Circuit found that the prisoners presented sufficient evidence of their diligence "[b]ecause both [petitioners] filed their habeas petitions *pro se*, allege[d] specific efforts they pursued in order to file habeas petitions, and because both filed their claims within a reasonable period of time after they were transferred back to the Oregon facility and the extraordinary circumstances were removed." 465 F.3d 964, 970 (9th Cir. 2006).

Here, Brown was proceeding *pro se* and alleges that he paid another inmate to obtain the federal habeas petition form due to limited access to the law library. ECF No. 47-1. Even though he was required to work under lockdown conditions or with COVID restrictions, Brown only missed the statutory deadline by 10 days. This suggests that he worked diligently to complete his petition, despite significant obstacles, which is buttressed by the fact that Brown received delayed notice of the remittitur due to mail problems at the prison and there was a two-to-three-week lockdown in May 2021. ECF No. 47-1. Considering the specific facts of Brown's circumstances, the Court finds that Brown diligently pursued his rights.

For the reasons set forth above, the Court finds that Brown diligently pursued his rights but his cognitive defects affecting his working memory and processing speed in addition to the lockdown programs and COVID restrictions that interfered with his access to resources presented extraordinary circumstances which prevented Brown from filing his federal petition in a timely manner. *See Pace*, 544 U.S. at 418. Accordingly, the Court finds that the specific circumstances and confluence of factors of Brown's case warrant equitable tolling of the AEDPA limitations period.

**II.   Exhaustion**

A state prisoner first must exhaust state court remedies on a habeas claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that the state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). "A petitioner has exhausted his federal claims when he has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109,

1129 (9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *O'Sullivan*, 526 U.S. at 844–45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc).

A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief.'" *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996)) and *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) ("Fair presentation requires that the petitioner 'describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim.'")). "A claim has not been fairly presented in state court if new factual allegations either 'fundamentally alter the legal claim already considered by the state courts,' or 'place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it.'" *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014).

    a. **Ground 1(A)**

In Ground 1(A), Brown alleges trial counsel rendered ineffective assistance for failure to request a mistrial after Brown's mother attacked the victim's sister at the courthouse steps while driving a car. ECF No. 23 at 7. Respondents assert that Ground 1(A) is unexhausted because Brown presents new factual details and allegations in his federal petition, such as allegations that when questioned by the judge about their knowledge of the car accident that "at least two jurors stated the entrance of the courthouse was taped off." *Id*. In addition, Brown references eight local and national news articles that covered the incident, includes statements by trial counsel regarding media coverage and that counsel wanted to make a record about the "media frenzy" around Brown's trial. *Id*. at 8-10.

Brown argues that the additional allegations does not render the claim unexhausted because he does not add new evidence to support the allegations regarding the two jurors stating the courthouse entrance was taped off and that trial counsel described the media coverage of the

incident. ECF No. 46 at 10. As for the news articles, Brown asserts that he merely cites public information that was referenced in the trial transcript. *Id*.

The Court finds that the additional factual allegations do not fundamentally alter Brown's claim. The new allegations add some further information, but nothing in federal Ground 1(A) fundamentally alters the exhausted claim or places it in a different and significantly stronger evidentiary posture than when it was presented to the state courts. *See generally Dickens*, 740 F.3d at 1318. Ground 1(A) is exhausted.

### b. Ground 1(B)

In Ground 1(B), Brown alleges that trial counsel rendered ineffective assistance for failure to challenge the self-defense jury instructions. ECF No. 23 at 12. Brown acknowledges that Ground 1(B) was not presented to the state courts but argues the claims are technically exhausted as he can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default. ECF No. 46 at 11. A federal court need not dismiss a claim on exhaustion grounds if it is clear that the state court would find the claim procedurally barred. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *see also Dickens*, 740 F.3d at 1317 ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). A claim may be considered procedurally defaulted if "it is clear that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314 F.3d 371, 376 (9th Cir. 2002). Where a petitioner has "procedurally defaulted" a claim, federal review is barred unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

"Generally, post-conviction counsel's ineffectiveness does not qualify as cause to excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing *Coleman*, 501 U.S. at 754-55). However, in *Martinez*, the Supreme Court created a narrow exception to the general rule that errors of post-conviction counsel cannot provide cause for a procedural default. *See* 566 U.S. at 16-17. "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of trial counsel is excused, if state law requires that all claims be brought in

the initial collateral review proceeding ... and if in that proceeding there was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). Nevada law requires prisoners to raise ineffective assistance of counsel ("IAC") claims for the first time in a state petition seeking post-conviction review, which is the initial collateral review proceeding for the purposes of applying the *Martinez* rule.[1] *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019).

To establish cause and prejudice to excuse the procedural default of a trial-level IAC claim under *Martinez*, a petitioner must show that:

> (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different, and (3) the underlying ineffective assistance of trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

*Ramirez*, 937 F.3d at 1242 (internal quotation omitted). The first and second "cause" prongs of the *Martinez* test are derived from *Strickland v. Washington*, 466 U.S. 668 (1984). *See Ramirez*, 937 F.3d at 1241. Determination of the second prong—whether there was a reasonable probability that the result of the post-conviction proceedings would be different—"is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir. 2015) (en banc)). The third "prejudice" prong directs courts to assess the merits of the underlying IAC claim. *See id.* A procedural default will not be excused if the underlying IAC claim "is insubstantial," *i.e.*, it lacks merit or is "wholly without factual support." *Id.* (quoting *Martinez*, 566 U.S. at 14-16).

Here, Brown would face multiple procedural bars if he were to return to state court with his unexhausted claims. *See, e.g.*, NRS 34.726, 34.810. Brown advances only *Martinez* as a

---

[1] The Nevada Supreme Court does not recognize *Martinez* as cause to overcome a state procedural bar pursuant to Nevada law. *Brown v. McDaniel*, 130 Nev. 565, 571–76, 331 P.3d 867, 871–75 (2014) (en banc). Thus, a Nevada habeas petitioner who relies on *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred, but that he nonetheless has a potentially viable argument for cause and prejudice under federal law.

basis for excusing the anticipatory default of his ineffective assistance of counsel claim. The Court views Brown's opposition as a concession that the only basis for cause as to the unexhausted ineffective assistance of trial counsel claim in Ground 1(B) would be *Martinez*, and will consider said claim technically exhausted on that basis.

Brown and Respondents, in the alternative, request deferring ruling on whether Ground 1(b) is procedurally defaulted given the fact-intensive nature of the claim. ECF Nos. 46 at 14, 57 at 9. The Court agrees that consideration of whether Brown can overcome the procedural default of Ground 1(B) is intertwined with the merits of the claim. Accordingly, the Court will defer a determination on whether Brown can demonstrate cause and prejudice until the time of merits determination. Respondents may renew the procedural default argument as to Ground 1(B) in their answer.

### c. Ground 2

In Ground 2, Brown alleges that the trial court violated Brown's right to an impartial jury under the Sixth and Fourteenth Amendments by failing to determine whether each juror heard about Brown's mother's altercation with the victim's sister. ECF No. 23 at 14. Respondents argue that Ground 2 is unexhausted because it was not raised in the proper procedural context on direct appeal. ECF No. 42 at 9. Brown asserts that because he raised this claim at each level in state court, Ground 2 is exhausted. ECF No. 46 at 15.

Although Brown raised this claim in his state habeas postconviction petition, the state court determined this claim was waived for failure to raise it on direct appeal. ECF No. 40-5 at 12-13. Despite Brown's assertions, his appeal briefs presented a claim of ineffective assistance of counsel based on trial counsel's failure to request a mistrial after Brown's mother hit the victim's sister with her car, not the substantive claim that the trial court violated his rights to an impartial jury as alleged in Ground 2. Because Brown failed to raise Ground 2 to the Nevada appellate court, Ground 2 is unexhausted. Under Nevada law, the failure to raise an issue that could have been raised on direct appeal is a procedural bar to habeas review on the merits. NRS § 34.810. Brown's failure to raise this claim on direct appeal means the issue was procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A procedural default prevents the federal court from reviewing a habeas claim unless the petitioner can show good cause and actual prejudice or a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. To demonstrate cause for a procedural default, a petitioner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 485 (1986). The external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). In certain circumstances, counsel's ineffectiveness in failing to properly preserve a habeas claim for review in state court will suffice as cause to excuse procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).

Brown argues that the Court should find good cause to overcome the procedural default of Ground 2 because his trial and appellate counsel were ineffective for failing to raise the claim. ECF No. 46 at 15. For ineffective assistance of counsel ("IAC") to function as cause to excuse a procedural default, the IAC claim itself must be exhausted before the state courts as an independent claim. *Carpenter*, 529 U.S. at 453. But here, Brown did not present any ineffective assistance of appellate counsel claims based on appellate counsel's failure to raise the substantive claim in Ground 2, so Brown cannot satisfy this cause requirement. To the extent Brown relies on his IAC claim as alleged in Ground 1(A) to demonstrate cause, his IAC claim does not show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule as required by *Murray*. 477 U.S. at 485. Because Brown cannot show cause to overcome procedural default, the Court need not reach his assertions of prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982). Accordingly, the Court dismissed Ground 2 as procedurally defaulted.

### III.   Motion for Discovery and Protective Order for Juror Information

#### a.   Background

In support of Grounds 1(A) and 2, Brown requests leave to conduct discovery and for a protective order for jury services of the state district court to release the information of the jurors

from his trial.[2] ECF No. 24. Brown asserts that it is highly likely that the jury was tainted with the knowledge of the incident that occurred between Brown's mother and the victim's sister. *Id*. at 4. Brown refers to an affidavit by Theresa Diamond ("Diamond"), who provides that she witnessed jurors discussing the incident in the hallway during trial, that one juror guided other jurors to the window to show where the incident occurred, that one juror stated, "he heard it was the defendant's mother," and that, "it shows the apple don't fall far from the tree." ECF No. 23 at 10-11. Diamond then told Brown's attorneys what she witnessed regarding the jurors. *Id*. at 11. Brown seeks to interview the members of the jury to substantiate his claim that they may have prejudged him based on the conduct of Brown's mother. ECF No. 50 at 4.

Respondents argue that discovery should not be granted for exhausted claims. ECF No. 43 at 3-4. They argue Brown's motion should be denied because habeas review should be limited to the record before the state court as determined by *Cullen v. Pinholster*. *Id*. at 5-6. 563 U.S. 170, 185 (2011). In addition, Respondents rely on *Shinn v. Ramirez* in arguing that the Court should not allow new evidence pursuant to 28 U.S.C. § 2254(e)(2). *Id*. at 7. Brown, however, asserts that the evidentiary restrictions of 28 U.S.C. § 2254(e)(2) do not apply because he was diligent as a *pro se* petitioner in state court by obtaining Diamond's affidavit and requesting an evidentiary hearing to further develop his claims. ECF No. 50 at 3.

b. Discussion

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018). However, Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." To determine whether a petitioner has established "good cause" for discovery, the court identifies the essential elements of the substantive claim and analyzes whether "specific allegations before the court show reason to believe that the petitioner may, if

---

[2] As discussed above, the Court dismisses Ground 2 as procedurally defaulted and therefore reviews Brown's motion for discovery as it relates to Ground 1(A).

the facts are fully developed, be able to demonstrate" entitlement to relief. *Bracy*, 520 U.S. at 908–09; *Roseberry v. Ryan*, 289 F. Supp. 3d 1029, 1034 (D. Ariz. 2018).

The Ninth Circuit has admonished courts not to permit a "fishing expedition" in habeas discovery. *Earp v. Davis*, 881 F.3d at 1144 (affirming district court's denial of further discovery where petitioner's allegations were "too attenuated and too speculative" to make a plausible showing); *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.").

Moreover, in *Pinholster*, the Supreme Court held that if a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitations of section 2254(d)(1) based upon the record that was made before the state court. To show good cause, in addition to any other required showing, the petitioner must demonstrate the discovery he seeks to obtain can be considered in this federal habeas proceeding under *Pinholster*. Otherwise, the parties and custodians of discovery may expend considerable time and money in obtaining or producing discovery materials that will have no effect on the outcome of the case.

In its order affirming the denial of Brown's state habeas petition, the Nevada Court of Appeals held:

> Brown argued his trial counsel was ineffective for failing to request a mistrial after his mother was involved in a traffic accident with the victim's sister near the courthouse. Brown contended jurors could have been aware of the accident and asserted counsel should have presented information to the trial court demonstrating that the jurors were overheard discussing the accident.
>
> Following the traffic accident, the trial court questioned the jurors regarding their knowledge of the incident. Only one juror was aware of it but did not know that it involved persons interested in Brown's trial. Following questioning of the jurors, Brown's counsel informed the trial court that he did not believe any of the jurors had been tainted by the accident and did not believe any further action was necessary. The trial court subsequently admonished the jurors not to talk amongst themselves or anyone else about any subjects related to Brown's trial.
>
> In light of the circumstances of this case, Brown failed to demonstrate counsel's actions fell below an objective standard of reasonableness. *See Ford v. State*, 105 Nev. 850, 853, 784 P.2d 951, 953 (1989) ("Tactical decisions are virtually unchallengeable absent extraordinary circumstances."). Moreover, the trial court questioned the jurors regarding their knowledge of the accident and the jurors stated they were unaware it concerned Brown. The trial court also admonished the jurors not to engage in discussions regarding any matter related to Brown's trial, and

> jurors are presumed to follow the court's instructions, *see McConnell v. State*, 120 Nev. 1043, 1062, 102 P.3d 606, 619 (2004). Given the record regarding this issue, Brown failed to demonstrate a reasonable probability of a different outcome had counsel moved for a mistrial or attempted to demonstrate that jurors were aware of the traffic accident. Therefore, we conclude the district court did not err by denying this claim.

ECF No. 40-21 at 4-6.

Here, the Court's analysis is limited to whether the Nevada Court of Appeals reasonably assessed Brown's claim that his counsel was ineffective under 28 U.S.C. § 2254(d)(1), which entails this analysis is limited to the evidence provided to the Nevada Court of Appeals under *Pinholster*. Brown seeks to interview the members of the jury to substantiate his claim that they may have prejudged him based on the conduct of Brown's mother. ECF No. 50 at 4. The record, however, shows that the trial court questioned the jurors regarding their knowledge of the incident and the juror that was aware of the incident did not know it involved individuals interested in Brown's trial. ECF No. 40-21 at 5.

Having reviewed Ground 1(A) allegations and the state court's decision on the merits, the Court finds that additional discovery cannot assist Brown in developing facts that "demonstrate that he is … entitled to relief." *Harris v. Nelson*, 394 U.S. 286, 300 (1969). Therefore, the Court need not consider the potential application of § 2254(e)(2) or *Shinn v. Ramirez*. *See Mothershead v. Wofford*, 2023 WL 5928498 (9th Cir. 2023) (finding it unnecessary to address the application of § 2254(e)(2) or *Ramirez* because the federal habeas claim was subject to merits review under 28 U.S.C. § 2254(d).). The motion is therefore denied.

### IV. Motion for Leave to File Exhibits Under Seal

Brown seeks leave to file under seal Exhibits 136. ECF No. 48. The need to protect medical privacy generally qualifies as a "compelling reason" for sealing records. *E.g. Abbey v. Hawaii Emp'rs Mut. Ins. Co. (HEMIC)*, 760 F. Supp. 2d 1005, 1013 (D. Haw. 2010); *see also* Nev. Rev. Stat. § 433A.715(1) (requiring courts to seal records related to mental health treatment). Here, the exhibit contains Brown's sensitive health information, including his psychological evaluation.

Having reviewed and considered the matter in accordance with *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, the Court finds that a

compelling need to protect Brown's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. The motion is granted and Exhibit 136 is considered properly filed under seal.

### Conclusion

IT IS THEREFORE ORDERED that Petitioner Asa Javon Brown's Motion for Leave to Conduct Discovery and for a Protective Order for Juror Information (ECF No. 24) is denied.

IT IS FURTHER ORDERED that Respondents' Motion to Dismiss (ECF No. 42) is granted in part. Ground 2 is dismissed as procedurally defaulted. A decision on whether Brown can demonstrate cause and prejudice under *Martinez* for Ground 1(B) is deferred until after the parties have answered and replied. Respondents may reassert the procedural default argument with respect to those claims in their answer.

IT IS FURTHER ORDERED that Brown's Motion for Leave to File Exhibits Under Seal (ECF No. 48) is granted. Exhibit 136 (ECF No. 49-1) is considered properly filed under seal.

IT IS FURTHER ORDERED that Respondents have until May 15, 2024, to file and serve an answer addressing the remaining claims of Brown's first amended petition.

IT IS FURTHER ORDERED that Brown will have 60 days from the date of service of the answer to file and serve a reply.

DATED: March 15, 2024

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE